**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 12 2024



DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:24-00037 |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 1343 |
| | ) | 26 U.S.C. § 7206(1) |
| ENOCH ARCHIBALD AMPAH | ) | 26 U.S.C. § 7206(2) |

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

At all times material to this Information:

## INTRODUCTION

1.     The Internal Revenue Service ("IRS") was an agency within the Department of Treasury responsible for administering and enforcing the tax laws of the United States, and collecting taxes owed.

2.     **ENOCH ARCHIBALD AMPAH** was a resident of Melissa, Texas.

3.     Beginning in or around January 2014 and continuing until in or around April 2021, **ENOCH ARCHIBALD AMPAH** worked for a tax preparation business known as Fast Returns Tax (hereinafter "Fast Tax"), which was registered as a Texas corporation and which maintained a place of business in Antioch, Tennessee, within the Middle District of Tennessee.

4.     **ENOCH ARCHIBALD AMPAH** traveled from Texas to the Middle District of Tennessee each tax filing season to work at Fast Tax as a tax preparer.

5.     As a tax preparer, **ENOCH ARCHIBALD AMPAH's** activities consisted of, among other things, the preparation and filing of U.S. Individual Income Tax Returns ("Forms 1040" or "federal income tax returns") on behalf of his taxpayer clients.

6.      While employed at Fast Tax, **ENOCH ARCHIBALD AMPAH** helped Fast Tax customers (1) apply for and receive loans through the Paycheck Protection Program, and (2) prepare and submit federal income tax returns which, in most cases, claimed tax refunds.

The Paycheck Protection Program

7.      The United States Small Business Administration ("SBA") was an agency within the executive branch of the United States Government. It was a function of the SBA to provide support to small businesses and entrepreneurs. It was further a mission of the United States to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

8.      On March 13, 2020, the President of the United States declared a national emergency concerning the COVID-19 pandemic (Proclamation 9994), and the declaration was further extended on February 18, 2022. The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

9.      To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. PPP loan applications required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation. A business or self-proprietor applying for a PPP loan was required to provide

2

documentation showing its payroll expenses or gross business income, such as filed federal income tax documents.

10. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia and Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

11. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments or owner compensation. The proceeds of a PPP loan were not permitted to be used by the borrower to purchase consumer goods, automobiles, personal residences, clothing, jewelry, or to pay the borrower's personal federal income taxes or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

<u>The PPP Loan Applications</u>

12. The PPP loan applications created by **ENOCH ARCHIBALD AMPAH** and further described herein were created and submitted through SBA-approved lenders, including Fountainhead SBF, LLC ("Fountainhead").

13. Fountainhead was an approved PPP lender and was headquartered in Florida. Fountainhead has servers outside of the Middle District of Tennessee, in Atlanta, Georgia. In conjunction with SBA, Fountainhead worked jointly with a technology partner whose website and internal PPP platform were hosted by Amazon Web Services, which furnished information technology infrastructure and maintained computer servers located outside of the Middle District of Tennessee, and which were used to receive electronic PPP loan applications created by **ENOCH ARCHIBALD AMPAH**.

3

14.     **ENOCH ARCHIBALD AMPAH** used the same originating IP address at Fast Tax in Antioch, Tennessee, to submit PPP loan applications and to file tax returns.

COUNT ONE

15.     Beginning in or around February 2021 and continuing until at least in or around May 2021, in the Middle District of Tennessee and elsewhere, **ENOCH ARCHIBALD AMPAH** devised and intended to devise a scheme to defraud the SBA, Fountainhead, and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by preparing and causing to be filed with the SBA false and fraudulent PPP loan applications.

16.     The purpose of the scheme was for **ENOCH ARCHIBALD AMPAH** to collect fees from clients by creating fraudulent PPP loan applications for them. It was part of the scheme that **ENOCH ARCHIBALD AMPAH** prepared the applications using information he knew to be false, including falsified business income and false tax returns, which **ENOCH ARCHIBALD AMPAH** created to support the falsified business income he included on the fraudulent PPP loan applications. By doing so, **ENOCH ARCHIBALD AMPAH** caused his clients to receive money to which they were not entitled. **ENOCH ARCHIBALD AMPAH** charged his clients between $1,000 and $5,000 to prepare and file PPP loan applications for them.

17.     During the course of the scheme, **ENOCH ARCHIBALD AMPAH** filed approximately 39 false PPP loan applications, resulting in approximately $802,427.50 in fraudulent loan funds to be disbursed to his clients.

18.     On or about March 10, 2021, in the Middle District of Tennessee, and elsewhere, **ENOCH ARCHIBALD AMPAH**, for the purpose of executing and attempting to execute the

4

scheme to defraud, caused to be transmitted by means of wire communications in interstate commerce signals and sounds, specifically a fraudulent PPP loan application for a client.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

THE UNITED STATES ATTORNEY FURTHER CHARGES:

19.     From in or about 2014 until in or about 2021, in the Middle District of Tennessee and elsewhere, **ENOCH ARCHIBALD AMPAH** prepared and caused to be electronically filed with the Internal Revenue Service ("IRS") numerous federal income tax returns for tax years 2013 through 2020 on behalf of Fast Tax clients living in the Middle District of Tennessee and elsewhere.

20.     When preparing federal income tax returns for certain Fast Tax clients, **ENOCH ARCHIBALD AMPAH** did not rely upon the actual expense, deduction, and other information provided by the taxpayer client.  Instead, for certain clients, **ENOCH ARCHIBALD AMPAH** inflated or created wholly fictitious deductions on Schedule A, including medical expenses, charitable contributions, and business income, which served to fraudulently lower the ultimate tax liabilities for these clients.  **ENOCH ARCHIBALD AMPAH** also falsified Schedule C business income and expenses on certain clients' tax returns in order to fraudulently lower his clients' ultimate tax liability.  Additionally, **ENOCH ARCHIBALD AMPAH** falsified other items on certain clients' tax returns to reduce their tax liability, such as including false Household Help Income expenses.

21.     **ENOCH ARCHIBALD AMPAH** prepared the fraudulent income tax returns in exchange for fees collected from these clients.

5

22.     **ENOCH ARCHIBALD AMPAH** created and placed on these clients' federal income tax returns and schedules attached thereto, for tax years 2018 through 2020, falsely inflated and wholly fictitious expenses and deductions that resulted in a tax loss to the IRS of at least $504,318.

23.     By doing so, **ENOCH ARCHIBALD AMPAH** enabled certain Fast Tax clients to obtain income tax refunds to which these taxpayers were not lawfully entitled.

24.     On or about March 21, 2021, in the Middle District of Tennessee and elsewhere, **ENOCH ARCHIBALD AMPAH** did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of a U.S. Individual Income Tax Return, Form 1040, for a client for calendar year 2020. The return was false and fraudulent as to a material matter in that it falsely claimed the taxpayer was entitled, under the provisions of the Internal Revenue laws, to claim tax deductions on Schedule A, including a false deduction for $22,541 of medical expenses and a false deduction for $4,521 of charitable gifts. **ENOCH ARCHIBALD AMPAH** knew and understood that those amounts were false and fraudulent and that the client was not entitled to claim a deduction for those fraudulent expenses.

In violation of Title 26, United States Code, Section 7206(2).

### COUNT THREE

THE UNITED STATES ATTORNEY FURTHER CHARGES:

25.     On or about February 1, 2018, in the Middle District of Tennessee and elsewhere, **ENOCH ARCHIBALD AMPAH** did willfully make and subscribe a false document, an IRS Form 1040 U.S. Individual Income Tax Return, for tax year 2017, which was verified by a written declaration that it was made under penalties of perjury, and which **ENOCH ARCHIBALD AMPAH** did not believe to be true and correct as to every material matter, to wit: among other

6

material falsities, the tax return reported that **ENOCH ARCHIBALD AMPAH** had two dependents on Form 1040 (line 6c), information **ENOCH ARCHIBALD AMPAH** knew was false, and which fraudulently reduced his tax liabilities.

In violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE ALLEGATION

26. The allegations contained in this Information are re-alleged and incorporated by reference as if fully set forth in support of this forfeiture.

27. Upon conviction of Count One, **ENOCH ARCHIBALD AMPAH** shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to, a money judgment in an amount to be determined, representing the value of the proceeds of the scheme and artifice to defraud as set forth in Count One.

## SUBSTITUTE PROPERTY

28. If any of the property described above, as a result of any act or omission of **ENOCH ARCHIBALD AMPAH**:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred, sold to, or deposited with a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any

7

other property of **ENOCH ARCHIBALD AMPAH**, up to the value of said property subject to forfeiture.

HENRY C. LEVENTIS
UNITED STATES ATTORNEY

S. CARRAN DAUGHTREY
ASSISTANT UNITED STATES ATTORNEY

8